IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION NO.: |
| v. : | |
| : | 1-11-CR-462-WSD-GGB |
| ECTOR JAVIER AGUILAR : | |
| GUADALUPE FLORES : | |
| ROBERTO BUSTOS OCAMPO : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Michael V. Herskowitz, Assistant United States Attorney, and pursuant to this Court's Order of October 29, 2012, hereby submits its Sentencing Memorandum in advance of the sentencings of the above-captioned defendants, and states as follows:

### I. INTRODUCTION

In light of the parties' objections to the Presentence Investigation Reports, the issues before the Court for sentencing are as follows: (1) whether Aguilar should receive the two-level upward adjustment for an aggravating role in the offense pursuant to U.S.S.G. § 3B1.1(c); (2) whether Aguilar should receive the two-level upward adjustment for an offense involving the importation of methamphetamine pursuant to U.S.S.G. § 2D1.1(b)(5); and (3) whether Ocampo and Flores should receive a four-level downward adjustment for a minimal role or, alternatively, a two-

level downward adjustment for a minor role in the offense conduct pursuant to U.S.S.G. § 3B1.2.[1]

For the reasons which will be developed below, the government respectfully requests that this Honorable Court overrule Aguilar's objection to the probation officer's recommendation assessing a two-level upward adjustment for an aggravating role in the offense but sustain Aguilar's and the government's joint objections to the upward adjustment for importation of methamphetamine. In addition, the government respectfully requests that this Court sustain the government's objections to the characterization of Ocampo and Flores as "*minimal* participants" and corresponding four-level downward adjustment under U.S.S.G. § 3B1.2(a).[2] Instead, the government recommends that the Court grant Ocampo and Flores a two-level downward adjustment to their offense levels as "*minor* participants" under § 3B1.2(b).

---

[1] Flores also objected claiming that he should be entitled to safety valve relief. Flores' safety valve debriefing has been scheduled for December 10, 2012. If the government believes that Flores has not qualified for safety valve relief after that debriefing, it will promptly notify the probation officer and the Court.

[2] Taking into account the additional downward adjustment authorized by U.S.S.G. § 2D1.1(a)(5), the "minimal participant" designation has the effect of reducing the defendants' total offense level by 10 levels (four levels under § 3B1.2(a) and six levels under § 2D1.1(a)(5)). If Ocampo and Flores were deemed "minor participants," this would reduce their total offense level by six levels (two levels under § 3B1.2(b) and four levels under § 2D1.1(a)(5)).

## II. PERTINENT FACTS

On August 24, 2011, a tractor-trailer entered the United States from Mexico at the Laredo, Texas point of entry. The refrigerated trailer contained twenty bundles of frozen squid. During a secondary inspection of the trailer, officials found bricks of cocaine concealed within the frozen squid. Following the discovery of the cocaine-laden squid, agents with Immigration and Customs Enforcement (ICE) conducted a controlled delivery of the load to a warehouse located at 3428 Browns Mill Road in Atlanta, Georgia. In particular, on the morning of August 27, 2011, an ICE undercover agent, posing as a truck driver, delivered the squid/cocaine to the warehouse which was unloaded by three unknown individuals. For the next eight days, ICE agents maintained 24-hour surveillance on the warehouse.

On September 4, 2011, agents observed a white box truck arrive at the warehouse and three individuals - later identified as the defendants Aguilar, Ocampo and Flores - enter the warehouse, periodically exit washing their arms and hands, and depart from the warehouse in the box truck about an hour later. Upon the request of ICE agents, a trooper with the Georgia State Patrol attempted to perform a traffic stop of the box truck. As the truck prepared to stop, both Ocampo and Aguilar jumped out of the passenger side of the truck and fled the scene, but were quickly apprehended. The trooper detained the driver, Flores, at the scene. Agents searched the box truck

and found 180 bricks of suspected narcotics in the back of the truck. During a search of the warehouse later that evening, agents located 20 bundles of suspected narcotics amongst the (rotten) squid.[3]

Following their arrests, both Aguilar and Flores submitted to post-<u>Miranda</u> interviews with agents. Aguilar told agents that he met with an individual named "Alfonso Mejia" the night before his arrest. During the meeting, Meija provided Aguilar with the keys to the warehouse and instructed Aguilar to remove the drugs from the squid and transport them in the box truck to a nearby location. Aguilar told agents that he recruited his brother-in-law, Flores, to assist with the job. During his interview, Flores confirmed that he was recruited by Aguilar to transport the drugs, and that Aguilar advised him where to drive the load.

In November 2012, Ocampo met with the government and advised agents that Aguilar brought Ocampo to the warehouse for a "cleaning job."[4] Upon arrival, Ocampo realized there were drugs concealed within the squid and wanted to leave. But, according to Ocampo, Aguilar then told Ocampo that Meija had threatened

---

[3] Agents believe that Aguilar and his crew simply missed these 20 bundles of drugs within the rancid squid.

[4] In contrast, Aguilar told agents that Ocampo was hired by Meija or someone working with Meija. The report of investigation from Ocampo's recent debriefing was turned over to all defense counsel and the probation officer.

Aguilar over the phone and, therefore, they should complete the job.

A Drug Enforcement Administration (DEA) laboratory chemist tested the suspected narcotics recovered in the warehouse and box truck which confirmed the following substances and weights: 180 kilograms of cocaine, 14.14 kilograms of ice-methamphetamine (95.8% pure), and 5.018 kilograms of heroin.

### III.  SENTENCING ISSUES

A.  **Aguilar's Aggravating Role Enhancement**

The probation officer correctly assessed Aguilar an enhancement for an aggravating role in the offense. Section 3B1.1(c) provides for a two-level increase of a defendant's base offense level if the defendant is an organizer, leader, manager, or supervises one or more participants. U.S.S.G. § 3B1.1 comment. (n.2). Importantly, "the assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Jimenez, 224 F.3d 1243, 1251 (11th Cir. 2000). Indeed, the Eleventh Circuit has held "many times that a defendant's recruitment of co-conspirators supports a § 3B1.1 enhancement." United States v. Vasquez, U.S. App. Lexis 16975 (11th Cir. 2012).

Here, it is undisputed that Aguilar recruited at least one other person to remove a very large quantity of narcotics from the rotten squid and transport the drugs in a box truck to another location. Namely, Aguilar admitted during his post-Miranda

debriefing with agents that he recruited Flores to assist with the transportation of the drugs, and Flores confirmed this fact during his separate debriefing. See Aguilar PSR at ¶¶16, 17.  Ocampo also claimed in his recent debriefing that Aguilar recruited him for the job as well.  Although Aguilar set forth a conclusory objection to the role enhancement, he tellingly offers no objection to the factual statements in the PSR that Aguilar recruited Flores and told him where to drive the load of drugs.  Thus, these facts underlying the probation officer's recommendation are deemed admitted. See United States v. Bennett, 472 F.3d 825, 834 (11th Cir. 2006)("[i]t is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.")   As such, the Court should overrule Aguilar's objection to the two-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c).

**B.     Aguilar's Methamphetamine Importation Enhancement**

The government joins Aguilar in his objection to the two-level upward adjustment to his offense level for the importation of methamphetamine pursuant to U.S.S.G. § 2D1.1(b)(5).  "Section 2D1.1(b)(4)[5] calls for a two-level increase in a defendant's offense level if '(A) the offense involved the importation of . . . methamphetamine . . ., and (B) the defendant is not subject to an adjustment under §

---

[5] This same provision is now located at § 2D1.1(b)(5) within the Sentencing Guidelines.

3B1.2' for a minor or mitigating role." United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir. 2007).  In Perez-Oliveros, the Eleventh Circuit rejected a defendant's narrow interpretation of § 2D1.1(b)(5) as applying to "only those defendants who themselves transport methamphetamine across the border."  Id. at 784.  In Perez-Oliveros, the Court held that the enhancement applied since the defendant, a truck driver, transported a load of methamphetamine from San Antonio, Texas to Mobile, Alabama "as part of the ongoing importation."  Id.  The Court reasoned that "the crime of importation does not end the moment the controlled substance enters the United States . . . [r]ather, importation 'is a continuous crime that is not complete until the controlled substance reaches its final destination point.'" Id. (citations omitted).

Here, Aguilar is clearly not subject to an adjustment for a minor or mitigating role.  Thus, the sole issue before this Court is whether the offense involved the importation of methamphetamine.[6]  While the methamphetamine was unquestionably imported from Mexico, the government submits that this case is distinguishable from the Perez-Oliveros case.  There, the importation was not complete as the defendant

---

[6] In the final PSR, the probation officer refers the Court to the Fifth Circuit case of United States v. Serfass, 684 F.3d 548 (5th Cir. 2012) for the proposition that the defendant's *knowledge* of the imported nature of the methamphetamine is not required for the enhancement.  The government agrees with this interpretation of § 2D1.1(b)(5) as related to the *mens rea* requirement, but respectfully submits that is not the issue here.

picked up the load of drugs in Texas and transported them to Alabama "as part of the ongoing importation." In the instant case, unlike in <u>Perez-Oliveros</u>, the importation of the drugs was completed upon their arrival in the Atlanta area. Moreover, once the drugs were off-loaded, they sat in the warehouse in Atlanta for approximately eight days before Aguilar and his associates removed the drugs from the squid and loaded them into the box truck. Further, the government does not have evidence that Aguilar was involved with this load of drugs prior to his meeting with Meija on September 3, 2011 - the day before Aguilar's arrest. Unlike the truck driver in <u>Perez-Oliveros</u>, by the time that Aguilar became involved in the offense conduct, the importation was already complete. Arguably, if the importation enhancement was applied to Aguilar under these particular facts, it might similarly be applied to anyone who would have later come into contact with these imported drugs. Based upon these reasons, the government submits that it cannot meet its burden of showing that the two-level enhancement for importation of methamphetamine applies to Aguilar in this case.

**C.     Ocampo's and Flores' Roles in the Offense**

The government respectfully disagrees with the probation officer and submits that Ocampo and Flores should be more appropriately characterized as "minor participants" in the criminal activity - not "minimal participants." In this Circuit, the "proponent of the downward adjustment -- here the defendant -- always bears the

burden of proving a mitigating role in the offense by a preponderance of the evidence." United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). With respect to the first principle, the De Varon Court held that the "district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating h[is] base offense level." Id. at 941.  The second principle for assessing the defendant's role under De Varon measures "the defendant's culpability in comparison to that of other participants in the relevant conduct." Id. at 944.  The "district court may consider only those participants who were involved in the relevant conduct attributed to the defendant."  Id. Moreover, "a large amount of drugs is an important factor in determining the availability of a minor role reduction." United States v. Teodoro-Torres, U.S. App. Lexis 12361 (11th Cir. 2010)(citing De Varon, 175 F.3d at 943).

     Here, Flores and Ocampo were held accountable for the same amount of drugs which they extracted from the rotten squid and transported (or attempted to transport). Since Flores' and Ocampo's actual conduct is identical to their relevant conduct, Flores and Ocampo cannot meet their burdens under the first part of the De Varon test to be eligible for *any* mitigating role adjustment.  In applying the second prong of the De Varon test,  these defendants were entrusted with moving a very large amount of narcotics - that being 180 kilograms of cocaine, 14.14 kilograms of

ice-methamphetamine (95.8% pure), and 5.018 kilograms of heroin. This fact alone militates against a finding of a minor role. Nonetheless, on balance, Flores and Ocampo are much less culpable than the other participants - namely Aguilar and Meija. As mentioned, the government's evidence shows that Flores and Ocampo were recruited around the day prior to their arrests to perform a limited task within the conspiracy, that is removing the drugs from the squid and transporting them in the box truck. Based upon the foregoing, the government submits that Flores and Ocampo should be classified as minor participants, and thus deserving of a two-level downward adjustment to their offense levels.

While the granting of a minor role is appropriate here, Ocampo and Flores have not met their burdens of showing that they were minimal participants. In distinguishing a minor participant from a minimal participant, the Eleventh Circuit has held that "[a] minor participant is one 'who is less culpable than most other participants, but whose role could not be described as minimal.'" United States v. Mendez, 405 F. App'x. 444, 448 (11th Cir. 2010)(citing De Varon,175 F. 3d at 945). On the other hand, "[t]he minimal-participant designation is reserved for those 'who play a minimal role in concerted activity,' and 'who are plainly among the least culpable of those involved in the conduct of a group.'" Id. In the instant case, Flores has not met his burden of showing that he was any less culpable than his co-defendant

Ocampo, and by the same token, Ocampo has not met his burden of showing that he was any less culpable than Flores.  See United States v. Stevens, U.S. App. Lexis 21850  (11th Cir. 2012)(district court did not plainly err in refusing to grant minimal role reduction for a drug courier who "failed to introduce any evidence that his conduct was less significant than the conduct of either [co-defendant]").  Rather, both Ocampo and Flores played a similar intergral part in the conspiracy by assisting Aguilar in removing millions of dollars worth of narcotics from rotten squid.  Based upon these reasons, this Court should sustain the government's objections to the probation officer's recommendations for a minimal role for Ocampo and Flores, and instead grant them minor role adjustments.

## IV.   WITNESSES/EVIDENCE

The government does not anticipate calling any witnesses or introducing evidence at sentencing.  But, depending on whether the defendants introduce evidence at sentencing concerning their respective roles in the offense, the government might in response call ICE Special Agent John Paul Clark.  In that instance, the government anticipates that the direct examination of Agent Clark will take no longer than 15 to 20 minutes.

## V.   CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Honorable Court resolve the objections to the Presentence Investigation Reports by assessing Aguilar a two-level upward adjustment for an aggravating role in the offense, granting Ocampo and Flores a downward adjustment for a minor (not minimal) role in the offense, and sustaining the objections to Aguilar's enhancement for importation of methamphetamine.  Consistent with the positions taken in this memorandum, the government will make arguments for a reasonable sentence under 18 U.S.C. § 3553 at each individual defendant's sentencing.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


MICHAEL V. HERSKOWITZ
ASSISTANT U.S. ATTORNEY
600 U.S. Courthouse
75 Spring Street, SW
Atlanta, Georgia 30303
(404)581-6071 - phone
(404) 581-6181 - fax
Ga. Bar No. 349515

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO.: |
| v. | : | |
| | : | 1-11-CR-462-WSD-GGB |
| ECTOR JAVIER AGUILAR | : | |
| GUADALUPE FLORES | : | |
| ROBERTO BUSTOS OCAMPO | : | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing upon counsel of record in this case via the ECF filing system

This 7th day of December 2012.

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


MICHAEL V. HERSKOWITZ
ASSISTANT U.S. ATTORNEY
600 U.S. Courthouse
75 Spring Street, SW
Atlanta, Georgia 30303
(404)581-6071 - phone
(404) 581-6181 - fax
Ga. Bar No. 349515